O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SURGERY CENTER, INC., | Case No. CV 19-02309 DDP (AFMx) |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANT'S MOTION TO DISMISS** |
| UNITEDHEALTHCARE, INC., | [Dkt 23] |
| Defendants. | |

Presently before the Court is Defendant UnitedHealthcare, Inc. ("United")'s Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"). Having considered the submissions of the parties and heard oral argument, the court grants the motion in part, denies the motion in part, and adopts the following Order.

**I. Background**

Plaintiff California Surgery Center is an ambulatory surgery center. (SAC ¶ 7.) Plaintiff California Spine and Pain Institute is a medical group comprised of anesthesiologists and other doctors. (Id.) Plaintiffs treated patient KES for spinal disease and, after other unsuccessful treatments, recommended to KES that she undergo spinal surgery. (SAC ¶ 13.) KES presented Plaintiffs

with a card indicating that she was insured by United, a PPO. (SAC ¶ 14.)

In late November 2016, Plaintiffs called United to discuss KES' treatment. (SAC ¶ 15.) United told Plaintiffs that KES was a United insured and was eligible for coverage, and authorized the services Plaintiffs proposed to render to KES. (Id.) United specifically stated that it would pay up to 80% of its in-network allowed amount and that it would honor an assignment of benefits and pay Plaintiffs directly. (SAC ¶ 22.) Indeed, Plaintiffs had obtained similar verifications of coverage and authorizations for treatment prior to rendering treatment to KES on several prior occasions. (SAC ¶ 30.) On each prior occasion, United paid Plaintiffs the amount discussed prior to treatment. (Id.) Plaintiffs and United engaged in similar practice with respect to other patients. (SAC ¶ 31.)

On December 1, 2016, four days before KES' scheduled surgery, United confirmed, in writing, its approval for spinal surgery. (SAC ¶ 24.) Plaintiffs then provided medical services to KES and submitted claims to United, as Plaintiffs had done in the past. (SAC ¶ 41.) United denied all of the claims, stating that KES' insurance coverage had been terminated prior to the date of surgery, on October 31, 2016. This action followed. United now moves to dismiss all claims.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.   "Violation of Statutes"

The SAC brings a first cause of action for "violation of statutes." Specifically, the SAC alleges that Plaintiffs are entitled to compensation for the services rendered to KES because

3

United violated California Health & Safety Code Sections 13717.8 and 1371 and California Insurance Code § 796.04.

### 1. Applicability of Health & Safety Code

United first contends that Plaintiffs' Health & Safety Code claims fail because the code is not applicable to United. Sections 1371 and 13717.8 are part of California's Knox-Keene Health Care Service Plan Act. Cal. Health & Safety Code § 1340. The Knox-Keene Act applies "to health care service plans and [certain] specialized health care service plan contracts . . . ." Cal. Health & Safety Code § 1343(a). Although the definition of "health care service plan" includes "any person who undertakes to arrange for the provision of health care services to subscribers or . . . to reimburse any part of the case for such services, in return for a prepaid or periodic charge . . .," the Knox-Keene Act does not apply to an entity "operating pursuant to a certificate issued by the Insurance Commissioner unless the entity is directly providing the health care service through [] entity-owned or contracting health facilities and providers . . . ." Cal. Health & Safety Code §§ 1343(e); 1345(f)(1). In other words, the Knox-Keene Act applies to insurers and HMOs. Regents of Univ. of California v. Principal Fin. Grp., 412 F. Supp. 2d 1037, 1048 (N.D. Cal. 2006). Such plans are licensed and regulated by California's Department of Managed Care. See Smith v. PacifiCare Behavioral Health of California, Inc., 93 Cal. App. 4th 139, 150 (2001).[1]

---

[1] As United points out, the Knox-Keene Act also applies to some PPOs. (Mot. at 11; Request for Judicial Notice, Ex. 3.)

4

Although not entirely clear, Plaintiffs appear to suggest that United is either an HMO, and thus subject to the Knox Keene Act, or possibly otherwise subject to the Act. (Opposition at 12-13.) To the extent Plaintiffs suggest the former, their position is at odds with the SAC, which acknowledges that Plaintiffs are "out of network providers" and have no set contract with United, which is a PPO. (SAC ¶¶ 14, 17.) Neither Defendant appears on the California Department of Managed Health Care's list of regulated plans, nor does the "UnitedHealthcare Select Plus" plan to which KES was subscribed. (RJN Ex. 2., Declaration of Gretchen Hess, Ex. A at 1.)[2] Plaintiffs have failed to allege any facts suggesting that any Defendant is subject to the Knox-Keene Act. See also Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co., No. CV 18-01283-RSWL-KS, 2019 WL 1470849, at *4 (C.D. Cal. Apr. 3, 2019) (finding Defendant UnitedHealthcare Insurance Co. not governed by the Knox-Keene Act).[3]

### 2. Insurance Code Claim

Plaintiffs' first cause of action is also premised upon an alleged violation of California Insurance Code § 796.04. That section provides that an insurer "that authorizes a specific type of treatment for services covered under a policyholder's contract

---

[2] Although Plaintiffs argue that this Court cannot look beyond the SAC to the plan document attached as Exhibit A to the Declaration of Gretchen Hess, Plaintiffs do not dispute the authenticity of document. "[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

[3] Having concluded that the Knox-Keene Act does not apply to Defendants, the Court need not reach the question whether the provisions in question provide a private cause of action.

5

or plan by a provider shall not rescind or modify this authorization after the provider renders the health care service in good faith and pursuant to the authorization for any reason, including, but not limited to . . . the insurer's subsequent determination that it did not make an accurate determination of the insured's eligibility." Cal. Ins. Code § 796.04. United contends that this provision does not entail a private right of action.

A private party has the right to sue for a violation of a statute only if the legislature manifested an intent to create such a right. Lu v. Hawaiian Gardens Casino, Inc., 50 Cal. 4th 592, 596 (2010). Such intent may be apparent from the explicit language in the statute or, in the absence of such language, from the legislative history. Id. at 597. Here, there is no dispute that the statute is silent as to whether a private right of action exists.

United points to legislative history indicating that the intent of the provision was to forbid "a health care service plan or a health insurer" from rescinding authorization for treatment on the basis of a later determination of ineligibility. 2007 Cal AB 1324. This history suggests that the California Legislature had a similar intent with respect to insurers and health care service plans. Indeed, consistent with that interpretation, Health & Safety Code Section 1371.8 is virtually identical to Insurance Code Section 796.04: "A health care service plan that authorizes a specific type of treatment by a provider shall not rescind or modify this authorization after the provider renders the health care service in good faith and pursuant to the authorization for any reason, including, but not limited to, the plan's subsequent .

6

1  . . determination that it did not make an accurate determination of
2  the enrollee's or subscriber's eligibility."  Cal. Health & Safety
3  Code § 1371.8.  As other courts have explained, neither Section
4  1371.8 nor the Knox-Keene Act, more broadly, includes a private
5  right of action.  See Summit Estate, Inc. v. Cigna Healthcare of
6  California, Inc., No. 17-CV-03871-LHK, 2017 WL 4517111, at *7 (N.D.
7  Cal. Oct. 10, 2017); Stanford Hosp. & Clinics v. Humana, Inc., No.
8  5:13-CV-04924 HRL, 2015 WL 5590793, at *8 (N.D. Cal. Sept. 23,
9  2015); Blue Cross of California, Inc. v. Superior Court, 180 Cal.
10 App. 4th 1237, 1250 (2009) ("[T]he Knox–Keene Act expressly
11 authorizes the DMHC to enforce the statute and does not include a
12 parallel authorization for suits by private individuals . . . .")
13      Plaintiffs point to no countervailing authority or legislative
14 history, contending only that a private right of action must exist
15 because "[United] does not claim enforcement of section 796.04 is
16 the responsibility of the California Department of Insurance (or
17 any other governmental body) . . . ."  (Opp. at 19:6-7).
18 Defendants, however, take no such position.  Indeed, Defendants
19 explicitly acknowledge that "Section 796.04, as part of the
20 Insurance Code, is regulated by the California Insurance
21 Commissioner."  (Motion at 16:12-13.)  See also, e.g. Namdy
22 Consulting, Inc. v. UnitedHealthcare Ins. Co., No. CV
23 18-01283-RSWL-KS, 2018 WL 6430119, at *3 (C.D. Cal. July 11, 2018);
24 2007 Cal AB 1324.  Plaintiffs' position has no merit.  Because
25 Section 796.04 does not bestow a private right of action upon
26 Plaintiffs, it cannot support their first cause of action.
27      B.   Breach of Implied Contract
28

7

Plaintiffs bring a second cause of action for breach of implied contract. Plaintiffs' opposition clarifies that this claim is premised upon a contract implied in law. (Opp. at 20-22.) In California, "contracts are implied in law where 'the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice.'" This is a quantum meruit claim." Design Data Corp. v. Unigate Enter., Inc., No. C 12-4131 PJH, 2013 WL 360542, at *5 (N.D. Cal. Jan. 29, 2013) (quoting Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal.App.4th 1410, 1419 (1996)) (internal citation omitted)).

The authority cited by Plaintiffs stands for the same principle. "It is clear that in the term 'quasi contract' the word contract is not definitive since the obligation depends not at all upon the intent of the parties but rather upon the unjust enrichment of one who has no intent, either express or implied, to pay or to make reimbursement for the consideration received by him. It is not an implied contract in the sense that the court finds an implied intent to pay. It is founded upon a relationship from which an obligation is imposed by law regardless of intent because good conscience dictates that the person benefited should make reimbursement." Santa Clara Cty. v. Robbiano, 180 Cal. App. 2d 845, 848 (1960). As Plaintiffs' opposition itself acknowledges, however, the SAC alleges only that United's "insured received a benefit, for which [United] is contractually obligated to pay (by contract with its insured) but refuses to pay." (Opp. at 21:11-13.) This circular allegation does not adequately state a claim for breach of a contract implied in law.

C.  Breach of Oral Contract

United also seeks to dismiss the SAC's third cause of action for breach of oral contract. As an initial matter, "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." Wal-Noon Corp. v. Hill, 45 Cal.App.3d 605, 613 (1975). A plaintiff can, however, plead inconsistent allegations in the alternative if he has a reasonable belief that each of the theories pleaded is legally tenable. See Crowley v. Katleman, 8 Cal. 4th 666, 678, 691 (1994).

United argues that Plaintiffs fail to adequately allege "that a meeting of the minds occurred or that there was mutual assent between the parties to enter into an agreement." (Mot. at 23:25-26). Plaintiffs do not dispute that mutual assent is a necessary element of contract formation. See, e.g., Binder v. Aetna Life Ins. Co., 75 Cal. App. 4th 832, 850 (1999). United's contention that the SAC does not allege United's assent to enter into an agreement or to pay a specific amount is not well taken. The SAC explicitly alleges, for example, that Plaintiffs "were expressly told that, after rendering services to KES . . . they would be paid [United]'s allowed amount which was purported by [United] to be 80% of the usual, reasonable, and customary amount for the services to be rendered . . ., which rates coincided with the rates which were specified in the . . . Agreement between KES and UHC." (SAC ¶ 9.) Although United correctly points out that verification of an insured's coverage is not sufficient to manifest an insurer's intent to pay for services rendered, the allegations here are not so limited. See Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins.

9

Co., 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000).  Here, as in Summit Estate, United's promise to pay Plaintiff's a specified rate for services rendered to KES is an objective manifestation of intent sufficient to sustain Plaintiffs' claim for breach of oral contract.  See Summit Estate, 2017 WL 4517111, at *3.

     D.   Negligent Misrepresentation

"The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc., 171 Cal. App. 4th 35, 50 (2009) (internal quotation omitted).  United contends that its alleged promise to pay Plaintiffs at some point in the future does not constitute a past or existing material fact.  Courts have agreed with the "basic principle[]" that "an action for negligent misrepresentation cannot be founded upon a false promise." Dielsi v. Falk, 916 F. Supp. 985, 995 (C.D. Cal. 1996) (citing Tarmann v. State Farm Mutual Automobile Ins. Co., 2 Cal.App.4th 153, 156 (1991)); see also Sanchez v. Aurora Loan Servs., LLC, No. CV1308846MMMRZX, 2014 WL 12589660, at *13 (C.D. Cal. June 10, 2014).  "The promise to pay is also a promise to perform an act in the future."  Trombley Enterprises, LLC v. Sauer, Inc., No. 5:17-CV-04568-EJD, 2019 WL 452044, at *4 (N.D. Cal. Feb. 5, 2019). Although a promise to pay in the future may form the basis of intentional misrepresentation or fraud claim, it can not sustain a

10

claim for negligent misrepresentation.[4]  See Trombley, 2019 WL 452044, at *4; Stockton Mortg., Inc. v. Tope, 233 Cal. App. 4th 437, 458 (2014)

E. Estoppel

Lastly, United argues that Plaintiffs' equitable estoppel claim is preempted by the Employee Retirement Income Security Act ("ERISA").  ERISA includes two different preemption provisions, one governing complete preemption and the other concerning conflict preemption. Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 945 (9th Cir. 2009).  United invokes the latter, 29 U.S.C. § 1144(a).  "Conflict preemption exists when a state law claim 'relates to' an ERISA plan, in which case, the state law claim may not be brought. Schwartz v. Associated Employers Grp. Benefit Plan & Tr., No. CV 17-142-BLG-SPW, 2018 WL 453436, at *4 (D. Mont. Jan. 17, 2018).  The Ninth Circuit has held, however, that ERISA does not preempt state law estoppel claims similar to that at issue here.  "[C]ourts have held that ERISA does not preempt a third-party provider's independent state law claims against a plan precisely because those claims do not 'relate to' the administration of an ERISA plan." The Meadows v. Employers Health Ins., 47 F.3d 1006, 1010 (9th Cir. 1995); see also Schwartz 2018 WL 453436, at *5 ("As the Ninth Circuit and several others have explained, a third-party provider's claim for damages does not implicate a relationship Congress sought to regulate under ERISA.").

---

[4] Plaintiffs provide no authority or argument to the contrary.

11

United also argues, however, that even if Plaintiffs' claim is not preempted, Plaintiffs fail to allege all of the elements of an estoppel claim. "The doctrine of estoppel is available if the following elements are present: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1096 (9th Cir. 1985). United appears to suggest that Plaintiffs have failed to meet additional requirements applicable to ERISA plan beneficiaries bringing estoppel claims pursuant to ERISA. Although United is correct that ERISA beneficiaries asserting estoppel claims "must not only meet the traditional equitable estoppel requirements, but must also allege: (1) extraordinary circumstances; (2) that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan," those are not the circumstances here. Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 957 (9th Cir. 2014) (internal quotation omitted). As discussed above, Plaintiffs are not beneficiaries of any ERISA plan, and their third-party claims do not "relate to" ERISA. Plaintiffs' state law estoppel claims therefore survive.

**IV. Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The motion is denied with

12

respect to Plaintiffs' breach of oral contract and estoppel claims. The motion is granted with respect to Plaintiffs' claims for violation of statutes, breach of implied contract, and negligent misrepresentation.  The violation of statutes claims is dismissed, with prejudice.  The breach of implied contract claims and negligent misrepresentation claims are dismissed, with leave to amend.  Any amended complaint shall be filed within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: July 9, 2020

DEAN D. PREGERSON
United States District Judge