O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CALIFORNIA SURGERY CENTER, INC., et al. | ) ) ) | Case No. CV 19-02309 DDP (AFMx) |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT** |
| UNITEDHEALTHCARE, INC., | ) ) | |
| Defendants. | ) ) | [Dkt. 71] |

Presently before the Court is Defendant UnitedHealthcare, Inc. and UnitedHealthcare Insurance Company (collectively, "United")'s Motion to Dismiss Plaintiffs' Fourth Amended Complaint ("FAC"). Having considered the submissions of the parties, the court grants the motion and adopts the following Order.

## I. Background

Plaintiff California Surgery Center is an ambulatory surgery center. (FAC ¶ 7.) Plaintiff California Spine and Pain Institute is a medical group comprised of anesthesiologists and other doctors. (Id.) Plaintiffs treated nonparty patient KES for spinal disease and, after other unsuccessful treatments, recommended to KES that she undergo spinal surgery. (FAC ¶¶ 9, 15, 37.)

KES chose preferred provider organization ("PPO") insurance coverage through United so she could choose her own doctors, such as Plaintiffs. (FAC ¶ 39.) On over a dozen occasions, Plaintiffs verified that KES was United's insured and obtained treatment authorization from United. (FAC ¶ 15.) During each of these pre-treatment verification calls, United promised to pay for services rendered to KES "as long as KES was an eligible member on the date of coverage." (FAC ¶¶ 15, 41.) United paid Plaintiffs over $130,000 for treatment provided to KES over sixteen separate visits. (FAC ¶ 32.)

At some point, United began refusing to pay for services rendered to KES, notwithstanding United's pre-treatment conversations with and promises to Plaintiffs.[1] This action

---

[1] The dates on which Defendant allegedly refused to pay are not entirely clear. The FAC alleges, for example, that Defendant refused on February 27, 2017 to pay for services rendered on
(continued...)

2

followed. Plaintiffs' operative complaint alleges common law causes of action for breach of implied contract, breach of oral contract, negligent misrepresentation, and estoppel. United now moves to dismiss the FAC.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

---

[1](...continued)
November 7 and November 14, 2016. (FAC ¶¶ 33-34.) The FAC also alleges, however, that on November 21, 2017, Defendant refused to pay for services rendered on November 7, 2016. (FAC ¶ 35.)

plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679.  Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56.  "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

United contends, as it has with respect to prior iterations of Plaintiffs' Complaint, that Plaintiffs' state law claims are preempted by the Employee Retirement Income Security Act ("ERISA"). As this Court has explained, "[c]onflict preemption exists when a state law claim 'relates to' an ERISA plan, in which case, the state law claim may not be brought." Schwartz v. Associated Employers Grp. Benefit Plan & Tr., No. CV 17-142-BLG-SPW, 2018 WL 453436, at *4 (D. Mont. Jan. 17, 2018).  "Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA if it has a connection with or reference to such a plan." Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004) (internal quotation marks and citation omitted).  Where, however, adjudication of an independent state law claim does not require interpretation of an ERISA plan, the requisite "connection with or reference to" the plan does not exist. Id.; see also The Meadows v. Employers Health Ins., 47 F.3d 1006, 1010 (9th Cir. 1995); Schwartz 2018 WL 453436, at *5 ("As the Ninth Circuit and several others have explained, a third-party provider's claim for damages does not implicate a relationship Congress sought to regulate under ERISA."); cf. Marin Gen. Hosp. v. Modesto & Empire

4

Traction Co., 581 F.3d 941, 948-50 (9th Cir. 2009) (distinguishing oral contract claim from claims "based on an obligation under an ERISA plan.").

Here, portions of Plaintiffs' FAC suggest that this is a case much like Marin General Hospital or The Meadows, where insurance coverage questions were irrelevant to the alleged promises made to treatment providers. Marin Gen. Hosp., 581 F.3d at 943-44; The Meadows, 47 F.3d at 1008-9. The FAC alleges, for example, that Plaintiffs' claims "are based upon the individual rights of the PROVIDERS . . . and are not derivative of the contractual or other rights of the PROVIDERS' Patients. Plaintiffs' claims arise out of the interactions of those PROVIDERS with [United] . . . ." (FAC ¶ 5.) And, as described above, the FAC repeatedly alleges that United made promises to pay directly to Plaintiffs, much like the circumstances in Marin General Hospital and similar cases. Thus, Plaintiffs contend, any references in the FAC to KES' ERISA coverage or COBRA (Consolidated Budget Reconciliation Act) continuation insurance coverage does no more than "substantiate the claims for breach of an implied contract, negligent misrepresentation and estoppel [, and . . .] do not require interpretation of ERISA or the subject Plan documents." (Opposition at 14:2-4.)

Unlike Marin General Hospital, The Meadows, and other cases, however, the allegations in Plaintiffs' FAC are not limited to those described above. Rather, Plaintiffs' FAC includes, for the first time in this action, extensive allegations about both the existence and role of KES' insurance coverage. The FAC alleges, for example, that United promised to pay Plaintiffs "as long as KES

5

was an eligible member on the date of coverage." (FAC ¶ 39.) Plaintiffs further allege that "information concerning KES' status and eligibility as a COBRA continuation enrollee . . . was material and pertinent," and that the parties "understood and agreed . . . that [United] would pay [] claims in accordance with the terms of its policy with KES." (FAC ¶¶ 41, 54.) The FAC goes on to allege not only that United represented that KES' coverage "could not or would not be retroactively terminated," but also that United "was precluded from rescinding coverage" and "prohibited by law and estopped from rescinding . . . KES' coverage." (FAC ¶¶ 60, 80, 82.) Furthermore, Plaintiffs allege that "at the time KES received treatment . . ., her coverage was in force, in effect and she was on claim with Defendants," that "KES was actually a covered, insured member of Defendants' Plan and was entitled to coverage, benefits, insurance, and indemnity," that, "[i]n fact, KES was a member of the Plan on each of the subject dates of treatment" and that "[b]ecause KES was a covered member . . . [United] had no lawful right to retroactively cancel, terminate, or rescind KES'coverage and their rescission was null, void and unlawful."[2] (FAC ¶¶ 83, 85.)

These allegations are not merely incidental background references that substantiate Plaintiffs' independent claims. Rather, Plaintiffs' coverage allegations would necessarily require interpretation of KES' ERISA plan to determine whether she had coverage at the time Plaintiffs treated her. Indeed, Plaintiffs

---

[2] These allegations also appear, to some extent, to be inconsistent with allegations that KES was <u>not</u> covered, and that United falsely represented that she <u>was</u> covered. (FAC ¶¶ 66-68, 70.)

6

can not plausibly contend that their state law claims are independent of KES' ERISA plan while simultaneously alleging, as the FAC does, that "[b]y effectively rescinding coverage . . . Defendants . . . have violated their promises made to the PROVIDERS." (FAC ¶ 85)(emphasis added.) As this allegation makes clear, ERISA-related allegations are central to Plaintiffs' state law claims. Those claims are, therefore, preempted.[3]

**IV. Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. The Fourth Amended Complaint is DISMISSED, with leave to amend one final time. Any amended complaint shall be filed within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: SEPTEMBER 15, 2021

THE HON. DEAN D. PREGERSON
United States District Judge

---

[3] The court therefore need not address United's remaining arguments.