1

2                                                         O

3
                                                    JS-6
4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  CALIFORNIA SURGERY CENTER,  )  Case No. CV 19-02309 DDP (AFMx)
    INC., et al.                )
13                              )
                 Plaintiffs,    )
14                              )  **ORDER GRANTING DEFENDANTS' MOTION**
        v.                      )  **TO DISMISS FIFTH AMENDED**
15                              )  **COMPLAINT**
    UNITEDHEALTHCARE, INC., et  )
16  al.                         )
                                )
17              Defendants.     )
    _____ )
18

19       Presently before the Court is Defendant UnitedHealthcare, Inc.

20  and UnitedHealthcare Insurance Company (collectively, "United")'s

21  Motion to Dismiss Plaintiffs' Fifth Amended Complaint ("FiAC").

22  Having considered the submissions of the parties, the court grants

23  the motion and adopts the following Order.

24  **I.   Background**

25       The details of this matter are recounted in detail in this

26  Court's prior Orders.  Plaintiffs' core factual allegations, as set

27  forth in the FiAC, are largely similar to those alleged in the

28  previous five iterations of Plaintiffs' complaint.  In short,

1   Plaintiffs treated nonparty patient KES for spinal disease and,
2   after other unsuccessful treatments, performed spinal surgery on
3   KES.  (FiAC ¶¶ 9, 15-31, 34-37, 56.)

4        Prior to each treatment, KES presented an insurance card to
5   Plaintiffs indicating the she was an insured of United.  (FiAC ¶
6   39.)  KES chose preferred provider organization ("PPO") insurance
7   coverage through United so she could choose her own doctors, such
8   as Plaintiffs.  (FiAC ¶ 40.)  On over a dozen occasions, Plaintiffs
9   verified that KES was United's insured and obtained treatment
10  authorization from United, treated KES, billed United, and obtained
11  payment from United.  (FiAC ¶ 16-31.)

12       Eventually, United began refusing to pay for services rendered
13  to KES, notwithstanding United's pre-treatment conversations with
14  and promises to Plaintiffs.  United allegedly failed to pay for
15  services rendered on November 7, 14, 21, 29 and December 5 and 6,
16  2016.  (FiAc ¶ 85.)  This action followed.

17       The FiAC, like Plaintiffs Fourth Amended Complaint ("FoAC")
18  before it, alleges common law causes of action for breach of
19  implied contract, breach of oral contract, negligent
20  misrepresentation, and estoppel.  The FiAC alleges, as did the
21  FoAC, that Plaintiffs' claims "are based upon the individual rights
22  of the PROVIDERS . . . and are not derivative of the contractual or
23  other rights of the PROVIDERS' Patients.  Plaintiffs' claims arise
24  out of the interactions of those PROVIDERS with [United] . . . ."
25  (FiAC ¶ 5.)  In the Fourth Amended Complaint, however, Plaintiffs
26  for the first time included key allegations pertaining to the
27  status of KES' insurance coverage at the time Plaintiffs rendered
28  treatment.  The FoAC alleged, for example, that "at the time KES

1   received treatment . . ., her coverage was in force," that "KES was
2   actually a covered, insured member of Defendants' Plan and was
3   entitled to coverage, benefits, insurance, and indemnity," that
4   "[United] had no lawful right to retroactively cancel, terminate,
5   or rescind KES' coverage and their rescission was null, void and
6   unlawful," and that "[b]y effectively rescinding coverage . . .
7   Defendants . . . have violated their promises made to the
8   PROVIDERS."  (FoAC ¶¶ 83, 85.)

9        This Court determined that Plaintiffs' insurance-related
10   allegations would necessarily require interpretation of KES'
11   insurance plan to determine whether she had coverage at the time
12   Plaintiffs treated her.  As the court explained, state law claims
13   are preempted by the Employee Retirement Income Security Act
14   ("ERISA") when they "relate to" an ERISA plan.  Accordingly, the
15   court dismissed the FoAC, with leave to amend one last time.

16        Plaintiffs then filed the FiAC.  United again moves to dismiss
17   the operative complaint in its entirety.

18   **II.  Legal Standard**

19        A complaint will survive a motion to dismiss when it
20   "contain[s] sufficient factual matter, accepted as true, to state a
21   claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>,
22   556 U.S. 662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550
23   U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a
24   court must "accept as true all allegations of material fact and
25   must construe those facts in the light most favorable to the
26   plaintiff."  <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).
27   Although a complaint need not include "detailed factual
28   allegations," it must offer "more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id.</u> at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. <u>Id</u>. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." <u>Iqbal</u>, 556 U.S. at 679.  Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." <u>Twombly</u>, 550 U.S. at 555-56.  "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

**III. Discussion**

United once again contends, as it has with respect to prior iterations of Plaintiffs' complaint, that Plaintiffs' state law claims are preempted by ERISA.  As this Court has explained, "[c]onflict preemption exists when a state law claim 'relates to' an ERISA plan, in which case, the state law claim may not be brought." <u>Schwartz v. Associated Employers Grp. Benefit Plan & Tr.</u>, No. CV 17-142-BLG-SPW, 2018 WL 453436, at *4 (D. Mont. Jan. 17, 2018).  "Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA if it has a connection with or reference to such a plan." <u>Providence Health Plan v. McDowell</u>,

385 F.3d 1168, 1172 (9th Cir. 2004) (internal quotation marks and citation omitted).  Where, however, adjudication of an independent state law claim does not require interpretation of an ERISA plan, the requisite "connection with or reference to" the plan does not exist.  Id.; see also The Meadows v. Employers Health Ins., 47 F.3d 1006, 1010 (9th Cir. 1995); Schwartz 2018 WL 453436, at *5 ("As the Ninth Circuit and several others have explained, a third-party provider's claim for damages does not implicate a relationship Congress sought to regulate under ERISA."); cf. Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 948-50 (9th Cir. 2009) (distinguishing oral contract claim from claims "based on an obligation under an ERISA plan.").

Many of the allegations in the FiAC appeared in the FoAC.  As with Plaintiffs' FoAC, portions of Plaintiffs' FiAC again suggest that this is a case where, as in Marin General Hospital or The Meadows, insurance coverage questions are irrelevant to the alleged promises made to treatment providers.  Marin Gen. Hosp., 581 F.3d at 943-44; The Meadows, 47 F.3d at 1008-9.  The FiAC once again alleges, for example, that Plaintiffs' claims "are based upon the individual rights of the PROVIDERS . . . and are not derivative of the contractual or other rights of the PROVIDERS' Patients.  Plaintiffs' claims arise out of the interactions of those PROVIDERS with [United] . . . ."  (FiAC ¶ 5.)  And, as described above, the FiAC alleges that United made promises to pay directly to Plaintiffs, similar to the circumstances in Marin General Hospital and other cases.  Thus, Plaintiffs again contend, any references in the FAC to KES' ERISA coverage or COBRA (Consolidated Budget Reconciliation Act) continuation insurance coverage "actually

1  relate to misrepresentations made by Defendants when authorizing

2  and verifying coverage." (Opp. at 12:15-16.) Indeed, the FiAC

3  does include specific allegations to this effect, such as that "UHC

4  knew or should have known that its own information concerning KES'

5  entitlement to and eligibility for COBRA continuation coverage and

6  eligibility under the subject Plan was inherently unreliable,

7  faulty, erroneous, outdated, obsolete and anachronistic, and that

8  it lacked information concerning KES' entitlement to and

9  eligibility for COBRA continuation coverage . . . ." (FiAC ¶ 45.)

10     Once again, however, unlike Marin General Hospital, The

11  Meadows, and similar cases, and notwithstanding this Court's prior

12  dismissal on ERISA preemption grounds, the allegations in

13  Plaintiffs' FiAC include numerous allegations about both the

14  existence and role of KES' insurance coverage. The FiAC alleges,

15  for example, that "[b]y effectively rescinding coverage through

16  their failure and refusal to pay benefits to the PROVIDERS,

17  Defendants . . . have violated their promises." (FiAC ¶ 86

18  (emphasis added).) In a similar vein, "[i]mplicit in [United's]

19  representations was the representation that a future termination or

20  cancellation of coverage for KES would not and could not be

21  retroactive or affect KES' right to coverage . . . [,] and that

22  there could not and would not be any rescissions in coverage, or

23  retroactive coverage cancellations." (FiAC ¶ 61.) The FiAC goes

24  further, again alleging that United actually lacked the power to do

25  what it did because "UHC was prohibited by law and estopped from

26  rescinding their authorization and from rescinding or retroactively

27  cancelling KES' coverage on the grounds that KES was not eligible

28  for coverage." FiAC ¶ 84.

1    As with the FoAC, these allegations cannot be said to

2  incidentally "relate to misrepresentations."  Rather, they clearly

3  "relate to" KES' insurance coverage.  Allegations as to whether

4  United properly terminated KES' coverage, let alone had the ability

5  to do so, cannot be answered without interpretation of an ERISA

6  plan.  Because Plaintiffs' state law claims have significant

7  connections to that plan, those claims are preempted.[1]

8  **IV.   Conclusion**

9    For the reasons stated above, Defendants' Motion to Dismiss is

10  GRANTED.  The Fifth Amended Complaint is DISMISSED, with prejudice.

11

12

13

14  IT IS SO ORDERED.

15

16

17  Dated: November 3, 2022

18                                      DEAN D. PREGERSON
                                        United States District Judge

19

20

21

22

23

24

25

26

27  ─────────────────────

28    [1] The court therefore need not address United's remaining
   arguments.

7